DAVID J. HOSBEIN AND FLORENCE T. HOSBEIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hosbein v. Commissioner
Docket No. 20548-83.
United States Tax Court
T.C. Memo 1985-373; 1985 Tax Ct. Memo LEXIS 259; 50 T.C.M. (CCH) 530; T.C.M. (RIA) 85373; July 25, 1985. David J. Hosbein, pro se. M. Catherine McKenna, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined a deficiency in the amount of $2,505 in petitioners' joint 1979 Federal income tax. The sole issue for determination is whether petitioners are entitled to a deduction in the amount of $5,112 reported on their Federal income tax return for 1979 as business expenses for travel and entertainment and meetings and seminars. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Grass Valley, California, when they filed their petition in this case. Petitioner husband, David J. Hosbein ("David"), was a self-employed physician and general surgeon during the year at issue. Petitioner wife, Florence T. Hosbein ("Florence"), was a housewife during the year at issue. In addition David served as a director of M.H. Detrick Co., a corporation in which David's family owned a majority of the outstanding shares. David *261 did not receive a salary for performance of his duties as a director but was compensated for the expenses he incurred when traveling to and from directors' meetings. David was not otherwise reimbursed for any other expenses incurred in connection with services performed on behalf of M.H. Detrick Co., although directors who were employed as officers of the corporation were reimbursed for such expenses. During 1979 David and Florence had substantial investments. In addition to their ownership of M.H. Detrick Co. stock, David and Florence had an interest in Treadwell Associates, a limited partnership operated as an investment vehicle. The partners of Treadwell Associates met on a regular basis to discuss investments. David and Florence's children had an investment through Progress Foundation, a Swiss organization. Although the funds used to purchase the investment through Progress Foundation were attributable to the children and the investment was made on their behalf by David as custodian, David was the owner of record without any indication of his fiduciary status. David was the owner of record because he believed that Swiss law prohibited a custodial or trusteeship arrangement. *262 The deductions at issue relate to several trips made by petitioners during 1979 and their attendance at a conference sponsored by the CATO Institute in the same year. Petitioners claim that their travel and the attendance at the CATO Institute Conference are deductible expenditures as they were in whole or in part related to David's medical practice, David's position as a director of M.H. Detrick Co., petitioners' personal investments, and their children's investments. Respondent denies that these expenditures are deductible. CATO Institute Conference
Petitioners attended a conference entitled "Capitalism and the State of the World" from January 24 through January 28, 1979. The general themes of the conference were: How the American economy has degenerated into a system of government domination and privilege. How government interventions cripple economic coordination and development. How interventionist public policies and restrictions on international trade can be replaced with a functioning free economy. The conference did not provide specific investment information. However, it did provide basic economic and political information and a historical perspective *263 which David believed would assist him in making intelligent investment decisions. David felt that this conference was particularly appropriate for his investment needs because he was interested in long-term investments. Florence also gained investment information. Petitioners incurred expenses of $423 for transportation and $36 for food relating to this conference which they claimed as deductible expenditures on their joint Federal income tax return for 1979. Mexican Trip
In February of 1979 petitioners traveled to Mexico. The primary purpose of petitioners' trip to Mexico was to visit David's father who was going to relinquish his post as a director of M.H. Detrick Co. to David. David wished to discuss potential problems relating to the directorship with his father. Secondary reasons for the trip were to meet with an agent for M.H. Detrick Co. in Mexico to discuss the political and monetary environment in that country to determine whether it was feasible for M.H. Detrick Co. to continue doing business in Mexico and to purchase decorations for an office complex which David built in 1981. Petitioners incurred expenses of $673 for the cost of petitioners' round trip air *264 travel to Mexico and $327 for food and lodging which they claimed as deductible expenditures on their joint Federal income tax return for 1979. The total cost of petitioners' food and lodging during the trip was approximately $2,250. European Trip
On September 4, 1979, petitioners traveled from California to London. They returned to California on October 3, 1979.The total cost of petitioners' round trip air travel to London was $1,258. This amount was deducted on petitioners' joint Federal income tax return for 1979. The primary purpose of petitioners' European trip was to permit David to become familiar with the operations of businesses affiliated with M.H. Detrick Co. in London, Paris, and Zurich and become acquainted with the principals involved in these businesses. David believed that such a visit would enhance the relationship between M.H. Detrick Co. and these businesses. David did, in fact, meet with Al Mann who was involved in the London affiliate of M.H. Detrick Co., Ernst Meier who was involved in a Zurich business which supplied slide gate valves to M.H. Detrick Co. and Ray Barre who was the Paris agent of M.H. Detrick Co. David spent five days visiting the *265 affiliated businesses. Florence also met with Al Mann and his wife and Ray Barre and his wife. Florence spoke French and was able to facilitate communication with Ray Barre's wife. Petitioners incurred expenses of $735.50 for food and lodging and $82.50 for transportation in connection with their visits to the business affiliates of M.H. Detrick Co. which they claimed as deductible expenditures on their joint Federal income tax return for 1979. Secondary reasons for the European trip were to evaluate the market for buying and holding various assets in England, primarily gold, and to visit St. Mark's Hospital in London to gain information regarding colorectal surgery which David performed in his surgical practice. Petitioners spent a day investigating the possibilities of gold investment but determined that England was not a suitable place for investment. Petitioners incurred expenses of $145 for food and lodging in connection with their investigation of investments in England which they claimed as deductible expenditures on their joint Federal income tax return for 1979. David's visit to St. Mark's Hospital was more successful than petitioners' investment investigation. David *266 met with Sir Alan Parks, a preeminent colorectal surgeon, and Dr. Elliott, his assistant. David also observed surgical procedures and interviewed patients who had received the surgery. David found that clinic visits were a more valuable educational source for his practice than the formal programs conducted by professional organizations. David spent two and one-half days visiting St. Mark's Hospital. Petitioners incurred total expenses of $623 for food and lodging and $67 for transportation for both petitioners in connection with David's visit to St. Mark's Hospital. Petitioners claimed a deduction for the full amount of these expenditures on their joint Federal income tax return for 1979. During the European trip petitioners also spent a half day meeting with Marcel Studer of Progress Foundation. The purpose of petitioners' meeting was to have the investment through Progress Foundation transferred into the names of petitioners' children because David believed that it would be more appropriate to have the investment in the children's names as they became more mature and wanted to permit each child to split off his or her share. Petitioners incurred expenses of $125.50 for food *267 and lodging and $82.50 for transportation in connection with the meeting which they claimed as deductible expenditures on their joint Federal income tax return for 1979. Chicago and New York Trip.
In October of 1979 petitioners traveled to Chicago, Illinois, to attend a conference of the American College of Surgeons. Petitioners and two friends stayed at the home of David's father while they were at the conference in Chicago. Florence accompanied her husband to enhance his image and permit him to relate better to the physicians at the conference. A separate program was provided for the spouses of participants in the conference in Chicago. This program included some medically related activities, tours, and lectures on jewelry and investments. Petitioners also visited M.H. Detrick Co. during their stay in Chicago. After the conference of the American College of Surgeons, petitioners traveled to Presbyterian Hospital in New York for another conference. Respondent disallowed the deduction claimed by petitioners on their joint Federal income tax return for 1979 which was attributable to Florence's expenditures during this trip. OPINION Petitioners claim that they are *268 entitled to a deduction under sections 162(a)(2) [1] and 212(1) and (2) for the expenses allocable to travel and entertainment and meetings and seminars which were disallowed by respondent. Section 162(a)(2) permits a deduction for all ordinary and necessary traveling expenses paid while away from home in pursuit of a trade or business. The trade or business must be an existing trade or business. Hoopengarner v. Commissioner,80 T.C. 538, 540 (1983), affd. without published opinion 745 F.2d 66 (9th Cir. 1984); Frank v. Commissiner,20 T.C. 511, 513 (1953). Investment activities generally do not constitute a trade or business. Whipple v. Commissioner,373 U.S. 193, 202 (1963). However, expenses in connection with investment activities may be deductible under section 212(1) or (2) which permits a deduction for all ordinary and necessary expenses paid for the production or collection of income or for the management, conservation or maintenance of property held for the production of income. Expenses deductible under section 212(1) or (2) must relate to property or property rights in which the taxpayer has an existing interest. *269 Frank v. Commissioner,supra at 514; Beck v. Commissioner,15 T.C. 642, 670 (1950), affd. per curiam 194 F.2d 537 (2d Cir. 1952). Both sections 162(a)(2) and 212(1) and (2) require that deductible expenditures be ordinary and necessary. Ordinary has been defined as normal, usual or customary, Deputy v. duPont308 U.S. 488, 495-496 (1940); and necessary has been defined as appropriate and helpful, Welch v. Helvering,290 U.S. 111, 113 (1933). These expenses must be proximately related to the trade or business or investment activities. Kinney v. Commissioner,66 T.C. 122, 126 (1976); Walet v. Commissioner,31 T.C. 461,. 471 (1958), affd. per curiam 272 F.2d 694 (5th Cir. 1959). In addition costs incurred in the acquisition of a capital asset are not deductible. Woodward v. Commissioner,397 U.S. 572, 575 (1970). *270 Finally, respondent's regulations under section 162(a)(2) provide that traveling expenses to and from a destination will not be deductible if the primary purpose of the trip is personal. Sec. 1.162-2(b)(1), Income Tax Regs.
The Ninth Circuit has held that a spouse's expenses for travel and entertainment are deductible under section 162(a)(2) if the spouse "provided substantial services directly and primarily related to the carrying on of her husband's [or wife's] business." Weatherford v. United States,418 F.2d 895, 897 (9th Cir. 1969). In United States v. Disney,413 F.2d 783 (9th Cir. 1969), the Ninth Circuit did permit a deduction for travel expenses attributable to the spouse. The factors which the Ninth Circuit cited in its determination were the existence of a company policy to have the wives present on trips taken by executives, company payment of the wives' expenses, actual enhancement of the company image by the duties performed by the wife, a special need in the industry to maintain social contacts and the special needs of the employer in maintaining its family-oriented image. The Ninth Circuit held that the critical inquiries *271 were whether the "dominant purpose of the trip was to serve her husband's business purpose in making the trip and whether she actually spent a substantial amount of her time in assisting her husband in fulfilling that purpose." United States v. Disney,supra at 788. The record in Disney supported a finding that the wife's activities served a bona fide business purpose. The Ninth Circuit has declined to permit a taxpayer to deduct a spouse's travel expenditures where a lesser showing was made. Meridian Wood Products Co., Inc. v. United States,725 F.2d 1183, 1191 (9th Cir. 1984). Here, the record indicates that most of the disallowed expenditures do not meet the requirements for deductibility under either section 162(a)(2) or 212(1) or (2). CATO Institute Conference
Petitioners maintain that the CATO Institute Conference assisted them in making long-term investment decisions. Therefore, any deduction which might be available must meet the requirements of section 212(1) or (2). The CATO Institute Conference did not provide any specific investment information and was in fact designed only to provide general economic and political *272 information and a historical perspective. Petitioners did not show that the information they gained from the conference affected any individual investment decisions except David's testimony that he made the decision to buy gold and build a medical complex as a result of the conference. Clearly, the expenditures for the conference did not relate to property or property rights in which petitioners had an existing interest, and a deduction for these expenditures must be disallowed on that basis alone. In addition because of the nature and purpose of the conference, the relationship of the expenditures to petitioners' investments is so attenuated that no deduction is permissable under section 212(1) or (2). Mexican Trip
Petitioners' trip to Mexico was primarily to discuss problems related to David's appointment as a director of M.H. Detrick Co., and secondarily, in part, to discuss the political and monetary environment of Mexico with an agent of M.H. Detrick Co. to determine if it was feasible to continue operations of the corporation in Mexico. Initially, we note that in order for such expenses to be deductible as ordinary and necessary expenses under section 162(a)(2) they *273 must relate to David's trade or business as a director of the corporation. As petitioners have not shown that David was required to make this trip, David was not compensated for his expenses incurred during the trip while employees of the corporation acting in an official capacity would be and the fact that David's position as a director of the corporation was not compensated, [2] we do not find that the expenses were incurred as an expense of David's trade or business of being a director of the corporation. [3]
*274 In the alternative, petitioners argue that these expenditures were made in relationship to their status as investors of M.H. Detrick Co. and should be deductible under section 212(1) or (2). Unlike the expenditures for the CATO Institute Conference, petitioners do have an existing interest in the property to which they claim the expenditures relate. However, we do not find that it was usual, customary or normal for petitioners as investors in M.H. Detrick Co. to confer with parties who were involved in corporate operations. Certainly petitioners have not shown that these trips would have had any direct effect on their investment or on their investment decisions. Consequently, no deduction is allowable under section 212(1) or (2). [4]
An additional reason for petitioner's trip to Mexico was to purchase decorations for an office complex which David built in 1981.The travel expenses attributable to acquisition of these decorations *275 should be added to the cost of the decorations. Petitioners have presented no evidence that the decorations themselves were anything other than capital assets. Consequently, we can only conclude that the expenses of acquisition of the decorations are not deductible under section 162(a)(2). [5]
On the basis of this record, we deny a deduction for any of the expenses related to petitioners' trip to Mexico. European Trip
Petitioners' European trip was primarily related to the business of M.H. Detrick Co. We have determined previously that petitioners' expenses incurred during their trip to Mexico were not the business expenses of David as a director of the corporation or expenses for the production or collection of income or management or conservation of *276 income producing property. The circumstances of petitioners' trip to Europe in relation to the activities for M.H. Detrick Co. are substantially similar to the circumstances of petitioners' trip to Mexico. Consequently, we conclude that petitioners' primary purpose for their trip to Europe was personal and deny a deduction for their round trip air travel to London. In addition, we deny a deduction for any expenses related to the business of M.H. Detrick Co. Petitioners' expenses relating to their investigation of potential investments in England and their visit to Progress Foundation must also be disallowed. The expenses of investigating investments must meet the requirements of section 212(1) or (2). As petitioners had no existing interest in the property to which the expenses related and in fact decided not to invest as a result of their inquiries, no deduction is available under section 212(1) or (2). [6] Petitioners' expenses for their visit to Progress Foundation likewise must be disallowed as these expenditures do not relate to petitioners' investments but to their children's investments. [7]
*277 Petitioners' expenses related to David's visit to St. Mark's Hospital, however, are deductible in part. A portion of David's surgical practice consisted of colorectal surgery. David visited St. Mark's Hospital in order to improve his skills in this type of surgery. We can only conclude that David's expenses relating to his visit to St. Mark's Hospital are deductible as ordinary and necessary expenses of his surgical practice. However, there is no evidence that Florence provided substantial services directly and primarily related to David's surgical practice. Consequently, no expenses related to her stay in London during this period are deductible. The parties have stipulated that $623 for food and lodging and $67 for transportation were incurred by both petitioners during David's visit to St. Mark's Hospital. As neither party has indicated what portion of the expenses would be allocable to David alone, we will allow petitioners one-half of the expenses as a deduction under section 162(a)(2). [8]
*278 Chicago and New York Trip
Respondent disallowed the portion of petitioners' expenses for their Chicago and New York trip which were allocable to Florence. Initially, petitioners maintain that Florence's expenses were deductible because her presence enhanced the conduct of David's business. In support of their claim petitioners argue that the situation here is analogous to that in United States v. Disney,supra.The evidence in the record does not support their contention. In Disney the Ninth Circuit held that under the unique circumstances of that case the dominant purpose of the wife's trip was to serve the business purpose of her husband and that she actually spent a substantial amount of time assisting her husband in fulfilling that purpose. The record in that case was replete with evidence showing how the wife assisted her husband. Here, petitioners merely introduced David's testimony to the effect that generally Florence's presence enhanced David's image and that the wives at the conference were responsible for social activities. In the situation where a taxpayer seeks to claim a business expense for his or her spouse it is often difficult *279 to draw the line between business and personal motives for the presence of the spouse. A spouse's presence in any situation may provide some benefit to the taxpayer in his or her business relationships. However, in the situation here it is clear that Florence's presence at the conferences falls far short of the requirements for deductibility as a business expense.Petitioners have failed to submit sufficient evidence to show that the reasons for Florence's attendance at the conferences in Chicago and New York was primarily to serve the business purpose of David. Weatherfordv. United States,supra.We note that the trip to Chicago presumably permitted David and Florence to visit David's father and to entertain friends which would indicate that there were substantial personal motives for their trip to the conference. Even assuming that petitioners' motive for Florence's presence were primarily business and not personal, petitioners have not produced sufficient evidence to show how she actually assisted her husband in fulfilling his business purpose. In the alternative, petitioners maintain that the expenses attributable to Florence are deductible because *280 they were related to her status as an investor in M.H. Detrick Co. and because she attended an investment seminar while in Chicago. In neither case have petitioners demonstrated the proximate relationship between the investment and the expense, nor have they shown in the case of the investment in M.H. Detrick Co. that such expenses are normal, usual or customary. Finally, in the case of the investment conference they have not shown that these expenses relate to an existing interest in property or property rights. On the basis of this record, we deny a deduction for Florence's expenses relating to the Chicago and New York trip. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In Hirsch v. Commissioner,315 F.2d 731↩ (9th Cir. 1963), the Ninth Circuit disallowed claimed trade or business expenses of a taxpayer who was an uncompensated vice-president and executive committee member of a corporation in which he had extensive bond holdings. The Court found that the taxpayer had no expectation of profit or income attributable to his activities as a vice-president and executive committee member and therefore was entitled to no deduction under the predecessor of sec. 162(a). 3. Petitioners themselves have designated only a small fraction of their food and lodging expenses as deductible, presumably recognizing that their trip was primarily personal in nature.↩
4. Unlike the situation in Stranahan v. Commissioner,T.C. Memo. 1982-151↩, cited by petitioners in support of their claim, petitioners made no showing that unusual circumstances would require active efforts to preserve their investment.
5. Petitioners have not shown that they are entitled to depreciation deductions for the decorations in 1979. Unlike the situation in Hoopengarner v. Commissioner,80 T.C. 538 (1983), affd. without published opinion 745 F.2d 66↩ (9th Cir. 1984), the expenses at issue did produce an asset which survived a year beyond the time payment was made, and no deduction is available under sec. 212.
6. Petitioners claim that they had a proprietory interest in gold investments prior to their trip to London citing the fact that some of their children's investments through Progress Foundation were gold related. Petitioners' children's investments do not give them a propriety interest in gold investments, and petitioners cite no other evidence in the record that they had gold investments prior to their trip to Europe. Consequently, we will not consider petitioners' argument that their investigation in London was part of a preexisting, integrated plan of gold investment. ↩
7. In their brief, petitioners for the first time claim that the expenses of their visit to Progress Foundation would be deductible as an expense in connection with the determination, collection or refund of a tax under sec. 212(3). As we have repeatedly stated, we will not consider an issue raised for the first time on brief where the consideration of the issue would prejudice the opposing party. Johnsen v. Commissioner,83 T.C. 103, 120-121↩ (1984), and cases cited therein. Here, we believe that consideration of this issue would clearly prejudice respondent as he did not have the opportunity to rebut petitioners' contention at the trial of this case. Consequently, we have not further considered this issue.
8. Respondent conceded that substantiation of David's expenses related to his visit to St. Mark's Hospital is not at issue. Therefore, sec. 274(d) presents no obstacle to the application of the rule in Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Florence's expenses are not deductible pursuant to sec. 1.274-4(d)(2)(v), Income Tax Regs.↩, as claimed by petitioners as we have determined that none of Florence's days in Eurpoe were "business days".